J-A29042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :  PENNSYLVANIA
                                    :

           v.                         :
                                    :

BRADLEY FERRIS                 :
                                    :

          Appellant         :  No. 90 WDA 2023

Appeal from the Judgment of Sentence Entered September 26, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0009445-2021


BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:          **FILED: JANUARY 4, 2024**

Bradley Ferris (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of simple assault and strangulation.[1]  We affirm.

The trial court recounted the facts presented at trial as follows:

The Commonwealth presented its case through two witnesses. The victim, Matthew Miller [(Miller or complainant)], testified that he had been friends with Appellant for approximately ten years, but their friendship had ended prior to the incident on September 19, 2021.  N.T., 9/19/22, at 20.  Around 5:00 p.m. on that date, Miller arrived at Tequila Cowboy, a bar in Pittsburgh.  Appellant was also there, and Miller saw [Appellant] immediately upon entering.  *Id.* at 22.  Appellant approached Miller and a verbal altercation ensued wherein Appellant yelled obscenities at Miller. *Id.* at 23.  After a few minutes, Miller walked away and went to the outside patio area.  *Id.* at 24.  While out on the patio[,] Miller felt an arm wrap around his neck in what he described as a choke hold.  *Id.* at 24-25.  As the [assailant] was behind him, Miller was

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2718(a)(1).

unable to see who it was, but he heard Appellant say, "I will fucking kill you if you hang out with my cousin again." *Id.* at 25. Miller testified that Appellant kept his arm around [Miller's neck for approximately] five to ten seconds, during which time [Miller] felt increasing pressure. *Id.* at 26. [Miller] started having trouble breathing and when Appellant released his hold, Miller collapsed onto the ground, saw stars, and lost control of his bowels. *Id.* When Miller looked over his shoulder he saw Appellant, who continued to yell obscenities and threats to kill him. *Id.* at 26-27. Appellant eventually left the area and Miller reported the incident to uniformed City of Pittsburgh Police Officer Gabriel Figuero[a], who was working off-duty security at the bar. Officer Figuero[a], who was called as a witness [at trial] by Appellant, testified that he reviewed surveillance footage[2] from inside the bar which captured Appellant walk up behind Miller and place his arm around [Miller's] neck in a choke hold position. Appellant then lifted Miller up while his arm was still wrapped around Miller's neck[; Appellant] held [Miller] upwards of five seconds before dropping him to the ground. N.T., 9/26/22, at 19-20. Officer Figuero[a] did not observe any injuries [to Miller. *Id.*] at 19[.] Miller complained of soreness to his neck that lasted a few hours but otherwise denied any physical injury. N.T., 9/19/22, at 31. [Miller] did not seek any medical treatment. *Id.* at 32.

Victoria Norkevicus is Appellant's cousin and testified for the Commonwealth that the weekend before this incident[,] she had gone for a ride on Miller's family boat. *Id.* at 41. Although she was not at Tequila Cowboy on September 19, 2021, she was familiar with the incident because she received text messages from Appellant around 7:00 p.m. that evening referencing [the] boat ride and that Miller was just gagging. Norkevicus asked [Appellant] if he did something to Miller because she went on his boat[;] Appellant replied that he did. He also texted Norkevicus [stating Appellant had] told Miller that if he contacted [Appellant's] family[, Appellant] would kill him. *Id.* at 39.

At trial, Appellant did not deny the altercation with Miller or the text messages[,] but rejected that [Appellant's actions were] intentional or done with any intent to harm [Miller]. N.T., 9/26/22, at 6-8, 11-17. However, [Appellant] continually testified

---

[2] The trial court explained the video "footage was not preserved for trial[.]" Trial Court Opinion, 4/24/23, at 7.

that he had no specific recollection of exactly how he physically contacted Miller. *Id.* at 11-17. [Appellant] explained that Miller antagonized him prior to the altercation by referencing a suicide attempt by Appellant, and that this caused [Appellant] to go into a rage. *Id.* at 5-7, 9. [Appellant] explained that he understood he acted poorly and left the bar after realizing that he was wrong.

Trial Court Opinion, 4/24/23, at 3-5 (footnote added; footnote in original omitted; citations and some capitalization modified).

On September 26, 2022, the trial court found Appellant guilty of strangulation and simple assault. The court immediately sentenced Appellant to one year of probation for strangulation, and a concurrent one year of probation for simple assault.

Appellant timely filed a post-sentence motion for a new trial on October 6, 2022. Appellant claimed his convictions were against the sufficiency and weight of the evidence. Appellant filed a supplemental post-sentence motion on October 31, 2022, expanding on his weight and sufficiency claims. The trial court denied Appellant's post-sentence motion on January 9, 2023. Appellant timely filed this appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents four issues for review:

I.    Whether the evidence was insufficient to convict [Appellant] of strangulation where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] knowingly or intentionally impeded the breathing of complainant?

II.   Whether the evidence was insufficient to convict [Appellant] of simple assault where the Commonwealth failed to prove, beyond a reasonable doubt, that complainant suffered "bodily injury?"

III.    Whether the evidence was insufficient to convict [Appellant] of simple assault where the Commonwealth failed to prove that he intended to cause "bodily injury" to complainant?

IV.     Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion for a new trial?

Appellant's Brief at 5 (some capitalization modified).

Appellant first claims the Commonwealth failed to present sufficient evidence to prove all elements of strangulation beyond a reasonable doubt. *See id.* at 16-20. Specifically, Appellant argues that the *mens rea* element is absent. *See id.* at 18-20. Appellant concedes he "put his arm around [c]omplainant's neck," which caused complainant to collapse to the ground and "see stars." *Id.* at 19. Nonetheless, Appellant claims

> [h]ad it been [Appellant's] goal to cut off [c]omplainant's breathing, he surely would have kept his arm around [complainant's] neck for a substantially longer period of time. However, [Appellant] let go after a handful of seconds at most because he did not want to physically injure his decades-long friend.

*Id.* at 20.

The Commonwealth counters the evidence was sufficient to prove all elements of strangulation because Appellant demonstrated his "intent to impede [Miller's] breathing." Commonwealth Brief at 15. According to the Commonwealth,

> Appellant essentially minimizes and/or ignores evidence demonstrating that he squeezed [Miller's] neck - while lifting him off the ground - long enough for [Miller] to not only have difficulty breathing, but also caused him to see stars and lose control of his

- 4 -

bowels. … [A]ppellant threatened to kill [Miller] if he hung out again with [Appellant's] cousin.

*Id.* at 17-18. The Commonwealth emphasizes that Miller's "account of events that occurred on the patio were corroborated by Officer Figueroa's review of the surveillance video." *Id.* at 16.

We evaluate Appellant's sufficiency claim mindful of the following:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021) (citations and ellipses omitted). The "uncorroborated testimony of a single witness [can be] sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

The Crimes Code provides a "person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by … applying pressure to the throat or neck[.]" 18 Pa.C.S.A. § 2718(a)(1). "Infliction of a physical injury

- 5 -

to a victim shall not be an element of the offense. The lack of physical injury to a victim shall not be a defense in a prosecution under this section." *Id.* § 2718(b). The Crimes Code defines "intentionally" as the actor's "conscious object to engage in conduct of that nature or to cause such a result." *Id.* § 302(b)(1)(i). The Code defines "knowingly" as the actor being "aware that his conduct is of that nature or that such circumstances exist." *Id.* § 302(b)(2)(i). "Intent can be proven by direct or circumstantial evidence and it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Horlick*, 296 A.3d 60, 63 (Pa. Super. 2023) (citation and brackets omitted). "[A]s there is rarely direct evidence of a defendant's state of mind, intent is often established through circumstantial evidence alone." *Id.*

This Court confronted a similar challenge to a non-jury conviction of strangulation in *Horlick*. There, the defendant and his paramour (the victim) had a physical altercation in a hotel room. *Id.* at 61-62. Defendant punched the victim in the head and ribs and got on top of her after she fell to the ground. *Id.* Defendant "placed both hands around [the victim's] neck and applied pressure which made it difficult for her to breathe." *Id.* at 62. According to the victim, defendant's "choking caused her to experience ringing in her ears, she saw stars, urinated herself, and lost consciousness for a brief second." *Id.* The trial court found defendant guilty of strangulation and simple assault and not guilty of aggravated assault. *Id.* On appeal, defendant

challenged the sufficiency of the evidence supporting his strangulation conviction, claiming "the evidence is insufficient to prove he intentionally or knowingly restricted [the victim's] breathing." *Id.*

This Court held the evidence was sufficient to prove the *mens rea* required for strangulation. We stated:

> As [defendant] concedes in his brief, his squeezing of [the victim's] neck occurred while he was assaulting [the victim]. Under these circumstances, it was reasonable for the trial court to infer that [defendant] applied pressure on [the victim's] neck with the intent to restrict her airway. We cannot accept [defendant's] assertion that the finding of intent was based solely on "suspicion and surmise." Appellant's Brief at 10 (quoting **Commonwealth v. Bausewine**, 46 A.2d 491, 493 (Pa. 1946)). **The mere fact of squeezing a person's neck is well understood to impede that person's breathing; this fact alone is enough for a fact-finder to reasonably infer that the result is known or intended**. To be clear, we are not providing for strict liability. While this evidence is sufficient for a fact-finder to infer intent, the fact-finder may conclude other circumstances negate the reasonable inference about the defendant's state of mind.
>
> Further, [defendant's] release of his grip once [the victim] began to lose consciousness does not necessarily refute that [defendant] intended to restrict her airway. The fact that [defendant] quickly regretted his actions does not negate the conclusion that he acted intentionally. The evidence was certainly sufficient to support the trial court's verdict.
>
> Moreover, we emphasize that the statute does not set forth the point at which the victim's breathing must be restricted to prove strangulation. **See** 18 Pa.C.S.A. § 2718(a)(1). Here, the evidence established that [defendant] impeded [the victim's] breathing by applying pressure to her neck and throat.

**Horlick**, 296 A.3d at 63 (emphasis added; citations modified).

- 7 -

Instantly, Miller testified that he unexpectedly encountered Appellant[3] inside a bar and shouted obscenities at Miller. N.T., 9/19/22, at 23-24. Miller "went to the outside patio of [the bar] to remove [himself] from that situation." *Id.* at 24. Appellant then approached Miller from behind and placed Miller in a chokehold, "applying serious pressure to [Miller's] throat." *Id.* at 25. Miller confirmed that Appellant's choking him caused him to struggle to breathe. *Id.* at 26. Although Miller was unsure how long Appellant maintained the chokehold, "[i]t was long enough to make me collapse and have to recover after [Appellant] let go." *Id.* During the assault, Appellant threatened Miller: "I will fucking kill you if you hang out with my cousin again." *Id.* at 24. Miller testified that when Appellant released him: "I collapsed to the ground and started to see stars and unfortunately, I couldn't control my bowels … because of the pressure applied." *Id.* at 26. Miller stated that the chokehold caused pain in his neck for a few hours. *Id.* at 28. Miller never sought medical treatment. *Id.*

Officer Figueroa testified that he reviewed surveillance video from the bar that depicted Appellant's assault of Miller:

> I observed [Appellant] walk up behind Mr. Miller and place his arm around him and begin choking. [Appellant] had a chokehold on [Miller]. [Appellant] kind of lifted [Miller] up with a chokehold and then dropped him.

---

[3] Miller stated that he and Appellant had been best friends for years until they "had a falling out." *Id.* at 20.

N.T., 9/26/22, at 20.  Officer Figueroa stated that Appellant choked Miller for "three to five seconds, if that." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, we conclude the Commonwealth presented sufficient evidence to prove the *mens rea* of strangulation beyond a reasonable doubt.  As in **Horlick**, "the evidence established [Appellant] impeded [Miller's] breathing by applying pressure to [his] neck and throat."  **Horlick**, 296 A.3d at 63.  "[I]t was reasonable for the trial court to infer [Appellant] applied pressure on [Miller's] neck with the intent to restrict [his] airway."  *Id.*  Further, Appellant's repeated threats to kill Miller during and after the assault provided additional circumstantial evidence of Appellant's intent.  Accordingly, Appellant's first issue lacks merit.

In his related second and third issues, Appellant claims the Commonwealth failed to prove all elements of simple assault, and that Appellant attempted to cause "bodily injury." *See* Appellant's Brief at 21-24. Appellant emphasizes that Miller never sought medical treatment. *Id.* at 22. Appellant further argues "although [c]omplainant experienced some pain, he testified that it lasted only 'for two or three hours, up until [complainant] went to sleep that night.'" *Id.* (quoting N.T., 9/19/22, at 28).  Appellant compares this case to the facts presented in **Commonwealth v. Kirkwood**, 520 A.2d 451 (Pa. Super. 1987). *See* Appellant's Brief at 21-22.

In **Kirkwood**, the defendant, while dancing at a tavern, approached another dancing patron, "grabbed her by the arm and had begun to swing her violently around the dance floor." **Kirkwood**, 520 A.2d at 452. Defendant ignored the patron's pleas to stop, and "[t]he incident, she said, lasted approximately forty seconds and left her with bruises and cut marks on her arms." **Id.** at 452-53; **see also id.** at 453 (defendant's unwilling dance partner "testified[] she suffered pain in her arms and her right knee for a short period of time thereafter."). A jury convicted defendant of simple assault, and defendant challenged the sufficiency of the evidence. **See id.** at 452, 453-54. On appeal, this Court reversed. We explained:

> We conclude that th[e] evidence was insufficient to establish either the "physical impairment" or the "substantial pain" which is necessary to prove the crime of criminal assault as defined in 18 Pa.C.S. § 2701. Temporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault.

**Id.** at 454.

Here, the Commonwealth argues it adduced sufficient evidence to prove all elements of simple assault beyond a reasonable doubt. **See** Commonwealth Brief at 20-23. The Commonwealth states,

> [A]ppellant's violent act of placing [Miller] in a chokehold and squeezing cannot be viewed as a "trivial" social contact like the dancing, albeit aggressive, in **Kirkwood**. Thus, this Court may agree with the trial court's finding that [Miller's] loss of oxygen, collapse and pain to his throat constituted bodily injury sufficient to support his simple assault conviction.

**Id.** at 22.

- 10 -

A person commits simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." *Id.* § 2301.

> Under section 2701(a)(1), a victim need not actually suffer bodily injury; the attempt to inflict bodily injury may be sufficient. This intent may be inferred from the circumstances surrounding the incident if a specific intent to cause bodily injury may reasonably be inferred therefrom.

*In re C.E.H.*, 167 A.3d 767, 770 (Pa. Super. 2017) (citation and quotation marks omitted).

> The trial court in this case explained:

> Evidence demonstrated that Miller suffered bodily injury in that he became disoriented from loss of oxygen, collapsed, and experienced pain to his throat for several hours after the assault. That Miller failed to receive medical treatment is not dispositive to a finding of bodily injury. *See In re M.H.*, 758 A.2d 1249, 1252 (Pa. Super. 2006) [(rejecting argument that the failure to receive medical treatment after alleged assault precludes a finding of bodily injury)]; *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994).

Trial Court Opinion, 4/24/23, at 7. We agree.

Viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence to prove all elements of simple assault beyond a reasonable doubt. Contrary to Appellant's claim, *Kirkwood* is unavailing. Appellant's second and third issues do not merit relief.

In his final issue, Appellant argues the trial court abused its discretion in denying his post-sentence motion challenging the weight of the evidence. ***See*** Appellant's Brief at 25-29.

To prevail on this challenge, Appellant must establish that the evidence supporting his conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Smith***, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence.

***Id.*** (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence…." ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted). "The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

Appellant asserts,

> based on a careful review of the entire record, the trial court's application of such great weight to the Commonwealth's inferential evidence of intent, in light of the overwhelming direct evidence to the contrary, shocks one's sense of justice. Here, the evidence showed only that following a verbal argument[, Appellant] lost his cool and put his arm around complainant's neck for not more than five seconds. Complainant did not seek any medical attention….

Appellant's Brief at 28 (some capitalization modified).

The Commonwealth argues the trial court properly exercised its discretion in rejecting Appellant's weight challenge. *See* Commonwealth Brief at 24-29. According to the Commonwealth,

> Appellant … completely ignores the well-settled principle that assessing credibility is exclusively for the fact finder, and essentially asks this Court to set aside the trial court's credibility determinations and reweigh the evidence, which it is not permitted to do.

*Id.* at 26-27 (citing ***Commonwealth v. Miller***, 172 A.3d 632, 643 (Pa. Super. 2017) (where "[a]ppellant essentially asks us to reassess the credibility of the eyewitnesses and reweigh the testimony and evidence presented at trial," this Court "cannot and will not do so.")).

The trial court explained its rejection of Appellant's weight claim:

> The court found the Commonwealth witnesses and evidence credible. **Miller provided detailed testimony, which was corroborated during the defense case by Officer Figuero[a], when he testified to the surveillance footage that captured the assault.** Likewise, Victoria Norkevicus['s] testimony relative to Appellant's motive and admission was supported by the text messages sent by Appellant.

Again, Appellant did not dispute the altercation at trial but refuted that his actions were intentional. Importantly, as it related to a weight challenge, Appellant made this assertion despite his inability to recall how he assaulted Miller. Instead, [Appellant] offered that he simply reacted poorly after being provoked by Miller. **The court did not find Appellant credible**. … Appellant was able to recall the events leading up to the physical altercation but repeatedly testified that he could not remember his actions that resulted in him being charged for these crimes. Despite this faulty memory, he asked the court, as fact finder, to find that his actions were not intentional.

Thus, the court's rejection of the defense and the credibility afforded to the Commonwealth witnesses and evidence in support of the convictions should not "shock" anyone's sense of justice ….

Trial Court Opinion, 4/24/23, at 9 (emphasis added; some capitalization modified).

The record supports the trial court's reasoning. A factfinder is generally "free to believe some, all, or none of the Commonwealth's evidence" and "free to resolve inconsistencies or discrepancies in the testimony in either party's favor." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017). Appellant improperly asks us to substitute our judgment for that of the factfinder, which we cannot do. *See Miller*, *supra*; *Talbert*, *supra*; *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) ("A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses." (citation omitted)). As the trial court did not abuse its discretion, Appellant's final issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 1/4/2024